Carl I. **GARNER**, Plaintiff–Appellant,

v.

Jerry **SALLUOM**, et al., Defendants–Appellees.

No. 02–2472.

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 21, 2002.*

Decided Nov. 25, 2002.

Rehearing Denied Dec. 2, 2002.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

**300**

Before FAIRCHILD, EVANS, and WILLIAMS, Circuit Judges.

ORDER

Carl Garner brought this suit *pro se* under 42 U.S.C. § 1983, alleging violations of the Fourth and Fourteenth Amendments. Specifically, he alleged that two Marion County police officers unlawfully arrested him for violating a protective order, and that the Marion County government failed to properly train its police officers. The district court granted summary judgment on all his claims. We affirm.

Garner was previously married to Soraya Van Horn, and together they had two children, Anthony and Soroya. When Garner and Van Horn divorced, they entered into a child visitation order permitting Garner to visit his children the "day prior to each child's birthday beginning at 9:00 am through 9:00 am the day of the birthday." Following circumstances not explained in the record, an Indiana court entered a Permanent Protective Order on December 11, 2000, ordering Garner to "refrain from abusing, harassing, or disturbing the peace of [Van Horn], by either direct or indirect contact; ... [and] to refrain from entering the property of [Van Horn]." The order also stated, in handwriting at the bottom of the page, "This Order will not interfere with visitation."

On January 6, 2001, at approximately 7:30 a.m. on the day before Anthony's birthday, Van Horn awoke to knocking on her front door. Seeing Garner in her front yard, she called 911 and informed the operator that she had an order for protection against Garner. When Officers Jerry Salluom and Debora Oatis arrived on the scene, they found Garner in his parked car in Van Horn's driveway. Van Horn showed the officers the protective order against Garner and told them that Garner had been parked in her driveway for awhile, that he had knocked on her door for several minutes, and that he would not leave. Salluom verified with the sheriff's department that the protective order was still valid. According to Garner, when the officers spoke to him, he told them that he was visiting his son under his visitation rights and that Van Horn's copy of the protective order was not complete because it was missing the handwritten phrase at the bottom of the page. Garner asked for permission to go to his car and retrieve an accurate version of the protective order, as well as the visitation order, which he said would prove that his presence at Van Horn's residence was lawful. The officers declined, however, and arrested him for violating the protective order. The state ultimately dismissed the charges.

Garner filed this civil rights action against Salluom and Oatis, alleging that they lacked probable cause to arrest him. He also sued the Marion County government for inadequately training Salluom and Oatis, as reflected by their decision to arrest him without sufficient investigation. The officers raised qualified immunity as an affirmative defense. Garner later sought to amend his complaint by substituting Marion County Sheriff Jack Cottey

for the Marion County government. The district court denied the request on grounds that the proposed amendment would be futile because Garner had not stated a viable claim against Cottey in either his individual or official capacity. The district court then granted summary judgment in favor of the original defendants on all claims, concluding that the officers had probable cause to arrest Garner based on his apparent violation of the protective order, and thus his unlawful arrest claim under § 1983 could not prevail. Garner appeals.

Garner first argues that probable cause did not exist because the protective order explicitly stated that the order was not to interfere with his visitation rights, which, he says, he was attempting to exercise the morning of his arrest. According to Garner, if the officers had taken the time to view his version of the protective order or the visitation agreement, they would have learned that he had a right to be at Van Horn's residence.

The existence of probable cause bars recovery under § 1983, *Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir.2001); *Jones v. Watson*, 106 F.3d 774, 781 (7th Cir.1997), and probable cause to arrest an individual exists when a reasonable officer believes that the individual committed a crime. *Marshall ex rel. Gossens v. Teske*, 284 F.3d 765, 770 (7th Cir.2002). An officer may rely on information provided by a credible witness, and once an officer believes that probable cause exists, he is under no constitutional duty to further investigate the matter to determine if the individual's claim of innocence is correct. *Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 524 (7th Cir.2001); *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir.1998). If an officer does not have actual probable cause to arrest an individual, he is entitled to qualified immunity if he

had "arguable probable cause." *Williams*, 269 F.3d at 781.

■ Here, Salluom and Oatis reasonably believed that they had probable cause to arrest Garner for invading Van Horn's privacy. Under Indiana Code § 35–46–1–15.1, it is a misdemeanor for an individual to knowingly or intentionally violate a protective order. The officers had ample information that would lead a reasonable officer to believe that Garner was violating this statute: Van Horn had called 911 claiming that Garner awakened her by knocking on her front door; upon arriving at Van Horn's residence, they saw Garner in the driveway; Van Horn presented a valid protection order prohibiting Garner from being on her property; and Garner refused to leave. Once the officers determined that probable cause existed, they did not have to view his supporting documents because they were under no constitutional duty to investigate his claim of innocence. We agree with the district court that the existence of probable cause bars Garner's claim under § 1983, and we need not reach the question whether the officers were entitled to qualified immunity. Summary judgment for Salluom and Oatis was properly granted.

■ Garner, who is African–American, next argues that the district court erred in granting summary judgment to Marion County because it has a pattern and practice of targeting minorities and encouraging false arrests. He did not make this argument in the district court; instead he argued that the county failed to properly train its officers. Nevertheless, a plaintiff must prove "that the individual officers are liable on the underlying substantive claim" in order to recover damages from a municipality under either a pattern-and-practice or failure-to-train theory. *Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir.1998); *see also City of Los Angeles v.*

*Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam) (citing *Monell v. New York Dep't of Soc. Servs.,* 436 U.S. 658, 691–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Because Garner failed to prove that Salluom and Oatis arrested him without probable cause, he failed to prove his substantive claim, and Marion County cannot be liable under either theory. Thus, the district court properly granted summary judgment.

Finally, Garner challenges the district court's refusal to allow him to amend his pleading in order to substitute Sheriff Cottey for the Marion County government. A district court has the discretion to permit a party to amend its pleading, and permission should be freely granted when justice requires. Fed.R.Civ.P. 15(a). But a court may deny leave to amend when the amendment would be futile, as when the new claim could not withstand summary judgment. *Bethany Pharmacal Co. v. QVC, Inc.,* 241 F.3d 854, 860–61 (7th Cir.2001); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). To the extent that Garner sought to sue Cottey in his official capacity, that claim must fail because Cottey is an agent of the county, *Richman v. Sheahan,* 270 F.3d 430, 439 (7th Cir.2001), and Garner has failed to establish any municipal liability on the part of Marion County.

AFFIRMED.