**Thomas FANTASIA, Plaintiff,**

v.

**William KINSELLA, Donald Hartsock, and P. Duggan, in their official capacities, Defendants.**

**No. 96 C 1537.**

United States District Court, N.D. Illinois, Eastern Division.

Jan. 16, 1997.

Timothy J. Touhy, Timothy J. Touhy & Associates, Chicago, IL, for Thomas Fantasia.

Richard T. Wimmer, James Vincent Ferolo, Michael T. Jurusik, Lance C. Malina, Klein, Thorpe & Jenkins, Ltd., Chicago, IL,

for William Kinsella, Donald Hartsock, P. Duggan.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Plaintiff Thomas Fantasia brings this action against three police officers for the Village of Orland Park, William Kinsella, Donald Hartsock, and Patrick Duggan, in connection with an altercation in his home and his subsequent arrest. Plaintiff alleges that defendants violated 42 U.S.C. § 1983 (" § 1983") by using excessive force against him, failing to prevent the use of excessive force against him, falsely arresting him and conspiring to violate his constitutional rights. Plaintiff also brings an claim under Illinois state law for malicious prosecution. Presently pending is defendants' motion for summary judgment.

### I. FACTUAL BACKGROUND

Early in the day on May 22, 1994, plaintiff went to his neighbor's house in Orland Park to watch a Chicago Bulls basketball game on television. Over the course of the day, plaintiff drank three "Rum and Cokes" and had a sip of a Bloody Mary drink. The Bulls lost the game and plaintiff returned home. Plaintiff's wife, Mary Fantasia, also had returned home from a trip to the grocery store a short time earlier.

After returning home, plaintiff argued with his wife over the actions of one of his daughters. At some point, a container of dry dog food and a ceramic container fell to the floor and spilled all over the kitchen floor. Both plaintiff and Mrs. Fantasia agree that plaintiff accidentally knocked both to the floor. During the argument with plaintiff, Mrs. Fantasia stated that if plaintiff did not quiet down she would call the police because she did not want her neighbors to hear their argument. Plaintiff then picked up the telephone and dialed 911 himself and handed the telephone receiver to his wife. The 911 operator answered and asked Mrs. Fantasia if she wanted "police or fire." Mrs. Fantasia answered "police," but when the police answered she said "never mind" and hung up

the receiver. Nevertheless, the 911 operator dispatched officers to plaintiff's home.

Responding to the call in separate squad cars, both officers Kinsella and Hartsock arrived at plaintiff's home between five and ten minutes after Mrs. Fantasia spoke to the 911 operator. Officer Hartsock went to the back door and attempted to follow plaintiff's daughter into the house through a screen door on the patio, but plaintiff slid the screen door closed before Officer Hartsock could enter. Plaintiff yelled to Officer Hartsock that he was not needed. Meanwhile, Officer Kinsella had entered the house through the front door. Upon his entry, Mrs. Fantasia told Officer Kinsella, "The Bulls lost. Maybe you can help him." Plaintiff acknowledges that he was disappointed about the Bulls' loss. When plaintiff saw Officer Kinsella, he demanded that Officer Kinsella leave the house. Using profanity, Officer Kinsella responded that he was going nowhere. Plaintiff, who was holding a broomstick, then told Officer Kinsella that "if you were not a police officer, I'd kick your f***ing ass." Officer Kinsella told plaintiff to release the broomstick or he would arrest plaintiff. After repeating the command twice—a time span of approximately five seconds—plaintiff released the broom. Officer Kinsella took the broomstick and threw it into the living room.

From this point on, the facts are disputed at nearly every turn. Because the facts must be viewed in a light favorable to the nonmovant, plaintiff's version of the facts will be used. *See Titran v. Ackman*, 893 F.2d 145, 147 (7th Cir.1990). After throwing the broomstick into the living room, Officer Kinsella threw his hat to the floor and told plaintiff, "come on ***hole, let's go outside right now." Plaintiff responded that he would not do that but "if you were not a police officer, I would beat the living sh** out of you."[1] Officer Kinsella then hit plaintiff in the hip area with a baton. After several baton strikes to plaintiff's arm and elbow, plaintiff was pushed backwards into a set of closet doors, which then collapsed. Plaintiff got up and said, "Is that the best you can do?" Officer Kinsella punched plaintiff in

---

1. Plaintiff alleges that Officer Duggan came into the house at this point.

the face. After recovering from the punch, plaintiff again asked Officer Kinsella, "Is that all you f***ing got?" Officer Kinsella responded with a second punch to plaintiff's face. After the second punch, Officer Hartsock pushed Officer Kinsella off of plaintiff and said "Do you know what you're doing?"

Plaintiff retreated into the kitchen and proceeded to pick up the telephone receiver. Officer Duggan, now in the kitchen, motioned to Officer Kinsella to relate to him what was happening. Officer Kinsella indicated that "he's going"—plaintiff was being arrested. Officer Duggan then asked plaintiff to hang up the telephone. Plaintiff hung up the telephone after Officer Duggan's second request to do so. Officer Duggan told plaintiff to step into the front room. At some point, Fantasia's seven year old son came up to Officer Kinsella, tugged on his pant leg and said, "Officer, please don't arrest my daddy. I love my daddy." Officer Duggan allowed plaintiff to lean over and talk to his son. Plaintiff told his son that Officer Kinsella was "an a**hole." With the assistance of Officer Kinsella, Officer Duggan placed handcuffs on plaintiff. Plaintiff was charged with aggravated assault.

Later that day, plaintiff was treated at Palos Community Hospital for injuries he had sustained to his hip, upper left arm and left elbow. After a jury trial, plaintiff was acquitted of all charges against him.

On February 16, 1996, plaintiff filed this action in the Law Division of the Circuit Court of Cook County. Defendants removed the action to federal district court in a timely manner. In Count I, plaintiff alleges that Officer Kinsella violated § 1983 by using excessive force against him. In Count II, plaintiff alleges that all three defendants violated § 1983 by failing to prevent the use of excessive force against plaintiff. In Count III, plaintiff asserts a false arrest claim against all defendants under § 1983. In Count IV, plaintiff claims that Officer Kinsella is liable for malicious prosecution under Illinois law for filing a complaint of aggravated assault against plaintiff. In Count V, plaintiff alleges that defendants violated § 1983 by conspiring to deprive plaintiff of his constitutional rights. Defendants move for summary judgment on all counts.

## II. SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The purpose of summary judgment is to assess the proof in order to see whether there is a need for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988); *Jakubiec v. Cities Service Co.*, 844 F.2d 470, 471 (7th Cir.1988). The burden of establishing the lack of any genuine issue of material fact rests with the movant. *Jakubiec*, 844 F.2d at 473. The nonmovant, however, "must set forth specific facts showing there is a genuine issue for trial, and cannot rest merely on the allegations contained in the pleadings." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

### A. Count I—Excessive Force

■ In Count I, plaintiff alleges that Officer Kinsella used excessive force against him in violation of his constitutional rights. Officer Kinsella claims that he is entitled to qualified immunity from liability in connection with the force he used against plaintiff. "Claims that a law enforcement officer used excessive force in the course of an arrest, investigatory stop, or other seizure are analyzed under the Fourth Amendment's objective reasonableness standard, which requires the court to balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Frazell v. Flanigan*, 102 F.3d 877, 881–82

(7th Cir.1996) (quoting *Graham v. Connor*, 490 U.S. 386, 395–96, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)). Although a police officer has the right to use some degree of physical coercion in making an arrest, the inquiry in an excessive force case is to determine how much force is "objectively reasonable." *Id.* The Seventh Circuit has provided guidance in analyzing whether a law enforcement officer's actions were objectively reasonable:

> [Objective reasonableness] of course depends on the facts and circumstances of each case, but we generally look to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight. We must consider the circumstances confronting the officer not through the 20/20 vision of hindsight, but through the most immediate perspective of a reasonable officer on the scene. . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* (quoting *Graham*, 490 U.S. at 396–97, 109 S.Ct. at 1871–73). Under this analysis, the officer's underlying intent or motivation is irrelevant. *Id.* 102 F.3d at 881–83.

Officer Kinsella contends that numerous facts demonstrate that he did not use excessive force against plaintiff, but rather, that he engaged in "good, sound police work" during his stop at plaintiff's home. Officer Kinsella entered the Fantasia home in response to a domestic situation. Mrs. Fantasia asked Officer Kinsella to talk with plaintiff and Officer Kinsella observed that the kitchen was strewn with dog food and a broken container. From this, Officer Kinsella contends that he reasonably believed that he was entering into a violent domestic dispute. Plaintiff approached Officer Kinsella with a broom in his hands and began yelling obscenities at him. Officer Kinsella contends that after he took the broomstick, plaintiff leaned down to speak to his son and arose in a "bladed stance," prompting Officer Kinsella's first punch. Officer Kinsella asserts that plaintiff's continual forward motions towards him prompted his second punch and baton beatings. Officer Kinsella states that these hits "were not forward pushes of aggression but efforts, obvious from the record, to cause [plaintiff] to be brought under control before serious injury occurred." Officer Kinsella contends his response "was rather muted under the circumstances."

█ The problem with this argument is that nearly all of the facts relied on by Officer Kinsella are contested by plaintiff. On a motion for summary judgment, all factual disputes must be resolved in favor of the nonmovant. *Oxman*, 846 F.2d at 452. In plaintiff's version of the events, Officer Kinsella confronted plaintiff, grabbed a broom from his hands and challenged him to a fight outside. Plaintiff states that he was never in a "fighter's stance or otherwise approached Officer Kinsella after he hit plaintiff." Plaintiff asserts—and defendants apparently do not dispute—that none of the defendants ever told plaintiff that they were placing him under arrest or that an arrest was imminent prior to his beating. Plaintiff points out that Officer Kinsella admits that plaintiff did not strike or make contact at any time with him. Plaintiff argues that his arrest was merely an attempt by Officer Kinsella to justify his actions after the fact.

█ Under the Seventh Circuit's guidelines, Officer Kinsella's actions must be judged in light of the severity of the crime at issue, whether plaintiff posed an immediate threat to the safety of the officers, and whether plaintiff was actively resisting arrest or attempting to evade arrest by flight. *See Frazell* 102 F.3d 877, 881–82. Plaintiff's alleged crime was aggravated assault on a police officer. From the facts as plaintiff alleges them, the officers may have been justified in believing plaintiff posed a threat to them as he appeared enraged and possibly intoxicated. Plaintiff, however, could not have been actively resisting or attempting to

evade arrest, as he had no idea he was in danger of being arrested. At base, the question is what force is reasonable for three officers to take to bring an individual under control who is screaming obscenities at them at a close distance. Officer Kinsella's most compelling reason for a finding that the continued hits on plaintiff were objectively reasonable—that plaintiff went after Officer Kinsella after each hit—is disputed by plaintiff. Plaintiff claims he never approached Kinsella and that the officers never attempted to restrain him, rather than beat him.

Even under Officer Kinsella's version of the events, the question is raised as to why Officer Kinsella failed to tell plaintiff that he was under arrest before hitting him for the first time. Officer Kinsella's aggravated assault charges against plaintiff state that plaintiff "shouted obscenities at Officers Kinsella and Hartsock, brushed up against Officer Kinsella three separate times, and held the shaft of a push broom handle in such a manner that it nearly struck Officer Kinsella in the face; thereby placing him in reasonable apprehension of receiving a battery." Officer Kinsella no longer asserts that plaintiff "brushed up" against him. In addition, at the time he first hit plaintiff, Officer Kinsella already had taken the broomstick from plaintiff and thrown it in the living room. All of the allegations relating to the alleged assault upon Officer Kinsella must have occurred prior to the first punch. Officer Kinsella provides no explanation why he did not place plaintiff under arrest at this time or attempt to restrain him without using force. More information is needed to determine which version is the more accurate description of events and whether Officer Kinsella's actions were objectively reasonable. A jury ultimately may find that Officer Kinsella's version of the events is the most accurate and it was reasonable to react to plaintiff by hitting him, but this determination cannot be made now on the disputed facts of the record. Defendants' motion for summary judgment on Count I will be denied.

## B. Count II—Failure to Prevent the Use of Excessive Force

█ In Count II, plaintiff alleges that defendants violated his constitutional rights by failing to prevent the use of excessive force against him.[2] "An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under § 1983 for his nonfeasance." *Thompson v. Boggs,* 33 F.3d 847, 857 (7th Cir.1994) (quoting *Gaudreault v. Municipality of Salem,* 923 F.2d 203, 207 n. 3 (1st Cir.1990)). A police officer, however, *"cannot be held liable for failing to intercede if he has no realistic opportunity to prevent an attack." Id.* (citing *Gaudreault,* 923 F.2d at 207 n. 3) (emphasis in original). The determination as to whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless a reasonable jury could not possibly conclude otherwise in light of all of the evidence. *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994).

### 1. Defendant Hartsock

█ Officer Hartsock argues that he cannot be liable for failing to prevent excessive force because plaintiff's own allegations establish that Hartsock intervened in the dispute by attempting to keep plaintiff away from Kinsella. Defendants do not actually accept plaintiff's version of the facts that Officer Hartsock intervened to assist plaintiff. In fact, Officer Hartsock testified in his deposition that he was *assisting* Officer Kinsella in subduing plaintiff by shoving and pushing him. Officer Hartsock's deposition testimony regarding the events leading up to his involvement in the incident is undisputed. Officer Hartsock testified that he did not immediately become involved with plaintiff and Officer Kinsella because he was calling for backup units over his radio. Officer Hartsock testified that he did so because "there was an altercation that was to ensue

**2.** Since plaintiff does not allege that Officers Hartsock or Duggan used any excessive force against him, Officer Kinsella cannot be liable for failing to prevent excessive force. Officer Kinsel-

la is not an appropriate defendant for Count II. Summary judgment will be granted in his favor on Count II.

or about to ensue, so at that point in time, we would contact for additional units because the more people we have on scene, the quicker the—we can get the situation at hand." As soon as Officer Hartsock finished making his call, he approached plaintiff and Officer Kinsella. Plaintiff does not have any objection to Officer Hartsock's actions once he became involved in the dispute.

Under either parties' view of the facts, Officer Hartsock's intervention hastened the end of plaintiff's beating. The only question is whether his intervention was timely. Keeping in mind that Officer Hartsock will be liable only if he had a realistic opportunity to prevent an attack, Officer Hartsock would have had an opportunity to intervene earlier only if he had not called for backup units. Making such a call, however, was a prudent move and an objectively reasonable course of action to take. Once Officer Hartsock became involved in the altercation, there would have been no opportunity to call for extra units if needed. The first realistic opportunity for Officer Hartsock to intervene was when he did—immediately after he made the call for backup units. Judgment as a matter of law will be granted in favor of Officer Hartsock on Count II.

### 2. Defendant Duggan

█ Officer Duggan argues that he is not liable for failing to prevent the attack on plaintiff because he did not arrive at plaintiff's residence until after the incident had ended and plaintiff had gone into the kitchen to make a telephone call. All of the parties agree that Officer Duggan arrived by entering through the garage, through the utility room to the recreation room, and by then climbing up the stairs to the kitchen. Plaintiff argues that Officer Duggan arrived before Officer Kinsella's first hit; defendants concur that Officer Duggan arrived afterwards. Plaintiff argues that he has brought forth enough evidence that Officer Duggan was present during the altercation to survive summary judgment. Plaintiff points to his own testimony and the testimony of his wife at his criminal trial as evidence that Officer Duggan arrived prior to the altercation.

Mrs. Fantasia's later testimony, however, does not support an earlier arrival time:

Q: What did [Hartsock] do [after Officer Kinsella hit plaintiff for the last time]?

A: Had his arms stretched out as though he was not holding my husband. And he had his other arm out towards Kinsella. And he looked at him. And he said do you know what you are doing. Do you realize what you are doing? And over his shoulder, Officer Kinsella looked at my husband and pointed at my husband and say [sic] you are going in. *Officer Dugan [sic] then came up the stairs,* and he had the handcuffs out....

Mrs. Fantasia's testimony corroborates the officers' testimony that Officer Duggan arrived subsequent to the attack on plaintiff. Nevertheless, plaintiff is entitled to have inconsistencies in testimony resolved in his favor. At the least, plaintiff's own testimony supports inference that Officer Duggan was present for the beating. Summary judgment will be denied as to Officer Duggan on Count II.

### C. Conspiracy to Violate Plaintiff's Constitutional Rights

█ Defendants contend that they are entitled to summary judgment on plaintiff's conspiracy claim because plaintiff has brought forth no evidence of an express or implied agreement among the defendants. To establish a *prima facie* case of civil conspiracy, a plaintiff must demonstrate "(1) an express or implied agreement among defendants to deprive plaintiff of secured constitutional rights and (2) an actual deprivation of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema,* 840 F.2d 437, 442 (7th Cir.1988). A plaintiff need not establish these elements by direct evidence; circumstantial evidence of the conspiracy is sufficient. *House v. Belford,* 956 F.2d 711, 721 (7th Cir.1992). Plaintiff alleges that defendants conspired to use excessive force against him, falsify official reports relating to his case, falsely charge him with a crime, and falsely report and testify against him at his criminal trial. In support of his conspiracy theory, plaintiff states that all officers were present for the beating, arrested plaintiff and acquiesced

when Officer Kinsella filed his complaint against plaintiff. Defendants contend that this evidence, even if true, does not support the inference of a meeting of the minds among defendants.

■ As to the alleged conspiracy to use excessive force, plaintiff has brought forth no evidence that the officers agreed to use force against plaintiff. All three officers arrived separately and came in through different entrances. None of the officers was ever alone with any one of the other officers. Plaintiff has brought forth no evidence that Officer Kinsella's actions at the time of the beating were anything but independent. The only reasonable inference is that Officer Kinsella was the sole actor involved in the decision to use force against plaintiff.

As to the decision to arrest plaintiff, again there is no evidence to suggest that Officer Duggan or Officer Hartsock had any reason to doubt Officer Kinsella's statement that plaintiff had committed an assault on him. Officers Duggan and Hartsock were entitled to rely on Officer Kinsella's statement and participate in arresting plaintiff. It is not clear that either Officer Duggan or Hartsock was even in the house when the alleged assault occurred—Officer Hartsock was standing outside the screen door for a period of time and Officer Duggan arrived sometime during the initial confrontation between plaintiff and Officer Kinsella. Again, plaintiff has brought forth no evidence that the defendants ever had—or could have had—any sort of meeting of the minds with respect to arresting plaintiff.

■ Finally, plaintiff has not brought forth any evidence that either Officer Hartsock or Officer Duggan had any involvement with the filing of Officer Kinsella's complaint, and only Officer Kinsella signed the complaint. Aside from the fact that plaintiff has not provided evidence of any alleged false testimony made by the defendants at his trial, defendants, as witnesses at plaintiff's trial, enjoy absolute immunity as to their testimony. *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). In light of the overall failure to produce any evidence of an express or implied agreement,

summary judgment will be granted as to Count V as to all defendants.

### D. False Arrest and Malicious Prosecution

Although defendants' motion requests summary judgment on all counts of plaintiff's complaint, defendants failed to address plaintiff's false arrest and malicious prosecution claims in their motion for summary judgment and supporting memorandum. These claims may have been appropriate for resolution on a summary judgment motion, but defendants have provided no facts or argument from which to make this determination. Defendants' motion will be denied as to plaintiff's false arrest and malicious prosecution claims.

IT IS THEREFORE ORDERED that:

(1) Defendants' motion for summary judgment [10] is granted in part and denied in part. Defendants' motion is granted as to Count II with respect to defendants William Kinsella and Donald Hartsock and Count V with respect to all defendants. Defendants' motion is denied as to Counts I, II, III and IV.

(2) The parties shall file a final pretrial order in open court on February 27, 1997 at 9:15 a.m. The final pretrial order shall be in full compliance with Local Rule 5.00.