Stanley ANTON, Plaintiff,

v.

THE SHERIFF OF DUPAGE COUNTY, Illinois, John Zaruba, in his individual and official capacity, Deputy Kretovic, in his individual and official capacity, Deputy Zamora, in his individual and official capacity, and County of DuPage, Illinois, Defendants.

No. 98 C 5523.

United States District Court, N.D. Illinois, Eastern Division.

May 5, 1999.

996

Marian Conroy Haney, Robin Kelly Whitlock, Meyer, Brown & Platt, Chicago, IL, Stanley A. Anton, Westmont, IL, for Plaintiff.

Ellen L. Champagne, Alison Irene Abel, DuPage County State's Atty's Office, Wheaton, IL, for Defendants.

## MEMORANDUM OPINION
## AND ORDER

CASTILLO, District Judge.

Plaintiff, Stanley Anton, brings this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Kretovic and Zamora, two DuPage County Sheriff's Office Deputies; Defendant Zaruba, Sheriff of DuPage County, Illinois; and the County of DuPage, Illinois. Anton alleges that, as a pretrial detainee, he was subjected to unconstitutional conditions of confinement at the DuPage County Jail. He also claims that Kretovic and Zamora conspired to interfere with his civil rights by withholding medical attention and adequate heat. Finally, Anton claims that Sheriff Zaruba and the County of DuPage, Illinois, are liable for any judgment against Kretovic and Zamora pursuant to the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"). 745 ILCS 10/9–102. Currently before the Court is Defendants' motion to dismiss Anton's claims under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is granted in part and denied in part.

## I. RELEVANT FACTS

The facts recited below are taken from Anton's pleadings, which the Court assumes to be true for purposes of this opinion.

On August 24, 1998, while a pretrial detainee at the DuPage County Jail, Anton tried to commit suicide and was placed on suicide watch. Anton's clothing was removed and he was placed in a rubberized cell. Pursuant to the suicide watch, Guards Kretovic and Zamora checked on Anton every 15 minutes. While in the cell, Anton alleges he became extremely cold and complained of the cold to the guards, renewing his complaints each time they checked on him. Anton claims that Kretovic and Zamora responded to his complaints with laughter and ridicule.

After a few hours passed he requested an emergency visit from a nurse, and Kretovic and Zamora told him a nurse would be notified. Anton alleges that only after he informed Kretovic and Zamora that failure to provide medical attention to an inmate is a felony—approximately two hours after he first requested medical attention—did the guards notify a nurse regarding Anton's complaints. Two nurses arrived and, after discovering Anton's body temperature was three degrees below normal, gave Anton a blanket. But when the nurses left, Kretovic and Zamora removed the blanket. Later, when Anton broke into sobs they gave him a different blanket. Still later, a maintenance worker arrived to take a reading of the cell temperature and, based upon this reading, placed a fan in the open doorway of Anton's cell to remove the cold air. Anton alleges it took four hours for the cell temperature to return to normal.

In Count I of his complaint, Anton claims that the defendants violated his constitutional rights under the Fourteenth Amendment. Specifically, Anton alleges that Kretovic and Zamora deprived him of adequate medical attention and subjected him to an unlawfully cold cell. In Count II, Anton alleges that Kretovic and Zamora conspired to interfere with his Fourteenth Amendment rights by conspiring to withhold adequate heat and medical care. In Count III, Anton seeks to impose liability for Kretovic and Zamora's torts on the DuPage County Sheriff's Office pursuant to the Tort Immunity Act. Count IV is identical to Count III, except that Anton names the County of DuPage, Illinois. Anton sues Kretovic, Zamora, and Sheriff Zaruba both in their individual and official capacities.

Defendants seek dismissal of Anton's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing first that Anton has failed to adequately allege the deprivation of any constitutional right. Further, Kretovic and Zamora assert a qualified immunity defense. Sheriff Zaruba seeks

dismissal of the claims against him on the ground that Anton did not allege his personal involvement in the alleged deprivations, and § 1983 does not permit respondeat superior liability. Finally, the Sheriff and the County of DuPage assert that the Tort Immunity Act does not impose liability on them for the acts of Kretovic and Zamora.

## II. *LEGAL STANDARDS* [1]

When considering a motion to dismiss, the Court views all facts alleged in the complaint, as well as any inferences reasonably drawn therefrom, in a light most favorable to the plaintiff. *See Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1343 (7th Cir. 1995). However, the Court need not accept as true conclusory legal allegations. *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 730 (7th Cir.1994). Defendants' motion to dismiss should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Cushing v. City of Chicago*, 3 F.3d 1156, 1159 (7th Cir.1993).

 DuPage County filed a motion to dismiss both Anton's claims against it, arguing it cannot be held liable under any circumstances for the alleged misconduct of DuPage County Sheriff's Deputies. The doctrine of respondeat superior (supervisory liability) does not apply to actions filed under § 1983, *Pacelli v. deVito*, 972 F.2d 871, 877 (7th Cir.1992), and the

**1.** In their Motion to Dismiss and Reply Brief, the defendants attribute the decisions in *Grillo v. Sielaff*, *Guy v. State of Illinois, et al.*, *Fantasia v. Kinsella*, *Balcerzak v. City of Milwaukee*, *Fuchness v. Doe*, *Tucker v. Randall*, *Ware v. Fairman*, *Anderson–EL v. O'Keefe*, *Jenkins v. Velasco*, *Mitchell v. Shomig*, and *Rosentreter v. Munding* to the Seventh Circuit Court of Appeals when in fact each case was decided by a district court. Whether this attribution is due to poor drafting or an intentional attempt to mislead, these decisions are not binding on this Court.

**2.** "Unlike convicted prisoners whose constitutional protections are primarily based in the

County cannot be liable under the Tort Immunity Act, *Ryan v. County of DuPage*, 45 F.3d 1090, 1092 (7th Cir.1995) ("It is plain that the county was properly dismissed; Illinois sheriffs are independently elected officials not subject to control [by] the county."). Anton has agreed to dismiss DuPage County from Counts I and IV, but has requested that the Court grant the motion without prejudice. Accordingly, DuPage County is dismissed without prejudice.

## III. *ANALYSIS*

Anton's complaint presents four theories of relief: a due process claim against Kretovic, Zamora and Sheriff Zaruba; a conspiracy claim against Kretovic and Zamora; a claim under the Tort Immunity Act against the Sheriff's Office; and a claim under the Act against Du Page County. As stated, Anton agrees to dismiss his claims the County. We analyze the remaining claims below.

### A. *Due Process Claims*

 States have an affirmative duty to provide for inmates' basic human needs, such as food, clothing, shelter, medical care, and reasonable safety. *See DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *see also Tesch v. County of Green Lake*, 157 F.3d 465, 472 (7th Cir.1998). The Constitution prohibits States from punishing inmates by depriving them of their basic needs: [2]

Eighth Amendment's prohibition on cruel and unusual punishment, state pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment." *Tesch*, 157 F.3d at 472 (citations omitted). A pretrial detainee's Due Process Clause protections are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); *Tesch*, 157 F.3d at 473. Thus, we rely on Eighth Amendment prisoner cases in deciding this Fourteenth Amendment detainee case.

[A] particular measure amounts ·to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.

*Rapier v. Harris,* 172 F.3d 999, 1004 (7th Cir.1999).

In addition to alleging the deprivation of a basic human need, Anton must also adequately allege that Defendants did so with sufficient culpability, that they were deliberately indifferent to his physical needs. *See Tesch,* 157 F.3d at 473 (a plaintiff "must prove both the objective component of his substantive due process claim (Did the conditions amount to punishment?) and the subjective or state of mind requirement (Did the officials act with a sufficiently culpable state of mind?)."); *Gutierrez v. Peters,* 111 F.3d 1364, 1369 (7th Cir.1997) (the Eighth Amendment failure to provide medical attention "deliberate indifference" standard requires proof of both objective and subjective components). Prison officials are deliberately indifferent when they act "intentionally or in a criminally reckless manner." *Tesch,* 157 F.3d at 474. Allegations of negligence or gross negligence are insufficient to state a claim under 42 U.S.C. § 1983. *Canton v. Harris,* 489 U.S. 378, 388–89 n. 2, 109 S.Ct. 1197, 103 L.Ed.2d 412; *Tesch,* 157 F.3d at 474 n. 2; *Ware,* 884 F.Supp. at 1206.

**1. Unlawful Cell Conditions**

Anton first contends that Kretovic and Zamora deprived him of his substantive due process right to adequate shelter. Anton has sufficiently pleaded facts to state a cause of action under § 1983 based on the temperature of his cell. We therefore deny the motion to dismiss with respect to Anton's conditions of confinement claim.

Although "[p]rison conditions may be harsh and uncomfortable without violating the Eight Amendment's prohibition against cruel and unusual punishment," *Dixon v. Godinez,* 114 F.3d 640, 642 (7th Cir.1997) (citing *Farmer v. Brennan,* 511 U.S. 825, 833–34, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)), prisoners and pretrial detainees are entitled to "the minimal civilized measure of life's necessities, including adequate shelter." *Id.* Thus, "prison officials who know about a condition which poses an excessive risk of harm to inmates, such as bitterly cold cells, may be liable under the [Fourteenth] Amendment for disregarding that condition." *Id.* at 645.

Pretrial detainees "have a right to protection from extreme cold." *Dixon,* 114 F.3d at 642. But, cold alone is insufficient for a successful conditions of confinement claim. *Id.* Instead,

courts should examine several factors in assessing claims based on low cell temperature, such as the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold.

*Id.* at 644. Generally, "the question of whether the severity of cold, in combination with the length of time which the inmate had to endure it, was sufficient to violate the [Fourteenth] Amendment is one which will often be peculiarly appropriate for resolution by the trier of facts." *Id.* at 643.

Taking into consideration the factors outlined in *Dixon,* we find Anton has sufficiently alleged a claim of inadequate shelter against Kretovic and Zamora. Although temporary exposure to cold conditions, such as Anton alleges, does not necessarily rise to the level of a constitutional violation, Anton alleges other facts that create an unlawful condition. For example, Anton was naked, and had no alternative means of protecting himself from the

cold. Although he complained for hours, the guards' only response was jeers and laughter. It was not until Anton threatened the guards with criminal prosecution that they responded in any way to his plight. By the time nurses arrived, Anton's body temperature was three degrees below normal, indicating the extremity of the cold in his cell. Kretovic and Zamora failed to take other measure to prevent Anton's exposure during the four hours it took to stabilize the cell temperature. Meanwhile, throughout this suffering, Kretovic and Zamora continued to taunt and laugh at Anton. Under the *Dixon* factors, Anton has adequately pled an unconstitutional deprivation of adequate shelter.

 Anton also sufficiently alleges that Kretovic and Zamora acted with deliberate indifference. In *Dixon*, the inmate alleged that the guards ignored his complaints and sarcastically suggested he file a lawsuit. *Id.* at 644. The Seventh Circuit concluded that the sarcastic responses Dixon allegedly received "help raise a dispute about both defendants' knowledge of the condition, and their refusal to takes steps to prevent it." *Id.* at 645 ("[R]equests for relief which have fallen on deaf ears may evidence deliberate indifference."). Anton alleges that he informed the guards of the severe cold and pleaded for help every 15 minutes. Instead of responding professionally, the guards jeered and laughed at him. Kretovic and Zamora's conduct was all the more deplorable in light of their knowledge that Anton had just attempted suicide. These facts if proven would establish Kretovic and Zamora's deliberate indifference.

Kretovic and Zamora argue that only sub-zero temperatures of long duration constitute a constitutional deprivation of adequate shelter. But the Seventh Circuit has made clear that the Eighth Amendment requires protection from severe discomfort, and that exposure to cold condi-

tions do not necessarily have to result in "frostbite, hypothermia, or a similar infliction" to constitute an unlawful condition of confinement.[3] *Del Raine*, 32 F.3d at 1035; *see also Dixon*, 114 F.3d at 644 (prison officials are not entitled to summary judgment just because the cold does not imminently threaten the inmates' health.).

Kretovic and Zamora also contend that because the incident occurred in August, they had no way of knowing that Anton would suffer exposure to extreme cold. Anton's immediate and continual complaints of cold put Kretovic and Zamora on notice of the cell conditions. That these complaints were met only with laughter and taunting, coupled with the allegations that they removed his blanket and otherwise failed to alleviate the conditions of the cell for hours, sufficiently allege deliberate indifference. Accordingly, Anton has stated a claim of deprivation of his constitutional rights against Kretovic and Zamora in their individual capacities.

 Anton also brings Count I against Sheriff Zaruba. However, liability under § 1983 is premised upon personal responsibility. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir.1995). An official is not liable under § 1983 merely because his subordinates violated a plaintiff's constitutional rights. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (no claim under § 1983 on a theory of respondeat superior). Anton does not claim that Sheriff Zaruba directly participated in, caused, or acquiesced in failing to provide adequate heating. Instead, Anton alleges that he filed a grievance against Kretovic and Zamora with the Sheriff, but only after the alleged constitutional injuries occurred. These allegation do not satisfy the personal responsibility standards. Similarly, Anton does not allege that the jail had an unconstitutional policy or custom of providing inadequate

---

**3.** We do not know whether a body temperature three degrees below normal constitutes hypothermia.

heat. Thus, he has not stated a claim against the Sheriff in his official capacity. *See Monell v. Department of Soc. Servs. of N.Y.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). For these reasons, Anton's inadequate shelter claim against the Sheriff is dismissed.

### 2. Deprivation of Adequate Medical Care

Anton also alleges Kretovic and Zamora violated his constitutional rights when they deliberately and recklessly denied him medical attention. For reasons stated below, we find Anton has adequately alleged that Kretovic and Zamora were deliberately indifferent to his serious medical needs. Thus, we deny Kretovic and Zamora's motion to dismiss.

▮▮▮▮ Not every claim by an inmate or pretrial detainee that he has failed to receive adequate medical attention constitutes a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Ware*, 884 F.Supp. at 1205. To properly allege a constitutional violation, a pretrial detainee "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 105, 97 S.Ct. 285; *Salazar v. City of Chicago*, 940 F.2d 233, 239 (7th Cir.1991); *Ware*, 884 F.Supp. at 1206. " 'Deliberate indifference' to the serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain proscribed by the Eight Amendment,'" or, in the case of a pretrial detainee, the Due Process Clause. *Id.* (*quoting Estelle*, 429 U.S. at 103, 97 S.Ct. 285). A plaintiff need not allege medical conditions imminently threatening one's life to establish "seriousness." *Gutierrez*, 111 F.3d at 1370 (serious medical needs encompass "medical conditions far less critical than 'life-threatening' "). Rather, a "serious medical need" extends to medical conditions in which "denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose." *Id.* at 1371 (*quoting Estelle*, 429 U.S. at 103, 97 S.Ct. 285).

▮▮▮▮ A guard's failure to provide medical care offends the Due Process Clause only if he was deliberately indifferent to the medical need. A "pretrial detainee must be provided with medical treatment if a reasonable officer would have considered the injury serious." *Id.* (*citing Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir.1995)). A reasonable delay in providing medical care is not per se evidence of deliberate indifference. *Murphy*, 51 F.3d at 717. Only "intentional or reckless injury amounts to a violation of a pretrial detainee's rights." *Ware*, 884 F.Supp. at 1206. Neither an inadvertent failure to provide medical care nor negligence amounts to a constitutional violation. *Estelle*, 429 U.S. at 106–107, 97 S.Ct. 285.

▮▮▮▮ Under these legal standards, Anton's deprivation of medical attention claim survives Kretovic and Zamora's motion to dismiss. When the nurses finally arrived to treat Anton, they discovered that Anton's body temperature was three degrees below normal. Consequently, a nurse gave Anton a blanket to raise his body temperature and prevent further exposure to the extreme cold. Anton alleges that after the nurses left, Kretovic and Zamora took his blanket. Later, after Anton broke into sobs, they gave him a different blanket and, still later, brought in a maintenance worker to return the cell's temperature to normal. At no time was Anton moved to a different cell, or provided with an alternative means of shielding himself from further exposure to the cold.

Anton does not attack the level of medical care provided him, but instead alleges that Kretovic and Zamora withheld medical attention by removing the blanket from him. These actions, Anton argues, constitute deliberate indifference to his medical needs. We agree. Kretovic and Zamora thwarted the medical treatment given to Anton by removing the blanket, even though by that time they must have known

**1002**

the severity of Anton's circumstances: his body temperature was three degrees below normal, he was naked, and he had no other means of preventing his exposure to the cold. Thus, Anton's complaint adequately alleges that the officers knowingly deprived him of necessary medical treatment.

■ Anton also alleges Sheriff Zaruba violated his constitutional right to medical attention. Anton's complaint is devoid of any allegations that Sheriff Zaruba played any role in removing the blanket. Similarly, Anton does not allege a custom or policy of depriving inmates of necessary medical care. Therefore, as to Sheriff Zaruba, Anton has failed to state a violation of his substantive due process right to medical attention.

### 3. Qualified Immunity

■ Kretovic and Zamora argue that even if Anton's constitutional rights were violated, they are entitled to qualified immunity. Under the doctrine of qualified immunity, public officials performing discretionary functions are protected against civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Formigoni,* 42 F.3d 1060, 1064 (7th Cir. 1994) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

■ Kretovic and Zamora are not entitled to qualified immunity. The Seventh Circuit has clearly established that prison inmates have a constitutional right to adequate heat, and that a "reasonable prison official would have known of a prisoner's constitutional right to protection from extreme cold." *Del Raine,* 32 F.3d at 1035 (denying summary judgment on the basis of qualified immunity where prison officials alleged the right to adequate heating was not established in 1986). Additionally, the law is clearly established that pretrial detainees have the constitutional right to adequate medical attention. *Estelle,* 429 U.S. at 104, 97 S.Ct. 285. If Anton can successfully prove his § 1983 claim, then Kretovic and Zamora would not be entitled to qualified immunity.

In sum, Anton has sufficiently alleged a cause of action for the deprivation of his due process right to adequate shelter and medical treatment against Kretovic and Zamora. Additionally, the guards are not entitled to qualified immunity on those claims. Thus, the motion to dismiss Count I against Kretovic and Zamora is denied. On the other hand, Anton has not alleged facts establishing liability on the part of Sheriff Zaruba, either in his individual or official capacity. Thus, the due process claim against the Sheriff is dismissed.

### B. *Conspiracy to Interfere With Civil Rights*

■ In Count II of the complaint, Anton contends Kretovic and Zamora conspired to deprive him of his constitutional rights in violation of § 1983. To sufficiently plead conspiracy under § 1983, a plaintiff must demonstrate "(1) an express or implied agreement among defendants to deprive plaintiff of secured constitutional rights and (2) an actual deprivation of those rights in the form of overt acts in furtherance of the agreement." *Fantasia v. Kinsella,* 956 F.Supp. 1409, 1415 (N.D.Ill.1997). "A plaintiff need not establish these elements by direct evidence; circumstantial evidence of the conspiracy is sufficient." *Id.* at 1415. However, a plaintiff's "allegations must raise an inference of a mutual understanding and 'acts performed together by the members of the conspiracy are adequate when they are unlikely to have been undertaken without an agreement.'" *Guy v. State of Illinois,* 958 F.Supp. 1300, 1308 (N.D.Ill.1997) (quoting *Kunik v. Racine County, Wis.,* 946 F.2d 1574, 1580 (7th Cir.1991)).

■ Anton's allegations of the conspiracy itself are somewhat conclusory. But, viewing the totality of the facts, Anton has sufficiently alleged an agreement between

Kretovic and Zamora. The complaint establishes that the guards worked in concert to deprive Anton of adequate shelter and medical treatment, suggesting at least an implied agreement to do so. Additionally, Anton alleges overt acts in furtherance of the agreement, such as Kretovic and Zamora's removal of the blanket, their continual taunting of him, and their failure to provide Anton alternative means of protection from the cold. At this stage of the proceedings, we find that Anton has sufficiently stated a claim against Kretovic and Zamora for conspiring to interfere with his civil rights. Defendants' motion to dismiss Count II is denied.

### C. *Sheriff's Liability*

In Count III, Anton alleges a claim against Sheriff Zaruba, the Sheriff of DuPage County, pursuant to Section 9–102 of the Tort Immunity Act. 745 ILCS 10/9–102 (1993). Sheriff Zaruba's motion to dismiss Count III is denied.

Under Section 9–102 of the Act, a local public entity is required to pay any tort compensatory damages judgment for which it or an employee acting within the scope of his employment is liable so long as the conduct was wilful and wanton.[4] Clearly, Kretovic and Zamora were acting within the scope of their employment at all times relevant to this case. Thus, the Sheriff's liability depends on whether there conduct was wilful and wanton. 745 ILCS 10/1–207, 10/1–210.

The Tort Immunity Act defines "wilful and wanton" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard of others or their property." 745 ILCS 10/1–210. In the context of an alleged violation of a pretrial detainees' Fourteenth Amendment right to adequate shelter, "deliberate indifference" has been defined as actual knowledge that the condition poses an excessive risk of harm to the inmate. *See Dixon,* 114 F.3d at 645; *Del Raine,* 32 F.3d at 1032. Therefore, if Kretovic and Zamora are found liable for willfully violating Anton's substantive due process rights in violation of § 1983, and Kretovic and Zamora were acting within the scope of their employment, the DuPage County Sheriff's Office may be required to pay any tort judgment assessed.

Sheriff Zaruba argues the DuPage Sheriff's Office, represented in this suit by Sheriff Zaruba in his official capacity, cannot be sued until after liability has been established against its employee. The Seventh Circuit rejected this argument in *Wilson v. City of Chicago,* 120 F.3d 681, 684–86 (7th Cir.1997). Sheriff Zaruba also argues that because Anton refers to the DuPage County Sheriff's Office in the pleadings, an entity that has not been named in this matter, the motion to dismiss must be granted for Sheriff Zaruba. However, the DuPage County Sheriff's Department conceded in a 1996 case that, for the purposes of the Act, "the department has no separate legal existence from the Sheriff." *See Tatum v. Davis,* No. 95 C 1341, 1996 WL 388405, at *2 (N.D.Ill. July 9, 1996) (*citing Mayes v. Elrod,* 470 F.Supp. 1188, 1191–1192 (N.D.Ill., 1979)). Thus, a claim against Sheriff Zaruba in his official capacity is a claim against the DuPage County Sheriff's Office. Sheriff Zaruba's motion to dismiss Count III is denied.

### V. *CONCLUSION*

For these reasons, Kretovic and Zamora's motion to dismiss Counts I and II is denied. Sheriff Zaruba's motion to dismiss is granted with respect to Count I. But Sheriff Zaruba's motion to dismiss

---

**4.** Defendants correctly point out that the Sheriff of DuPage County is explicitly not a local public entity as defined by Section 10/1–206. But "[e]very court that has faced the ... issue ... has held that county sheriffs are covered by the Tort Immunity Act." *Tatum v. Davis,* No. 95 C 1341, 1996 WL 388405, at *2 (N.D.Ill. July 9, 1996) (citing Illinois court cases).

Count III is denied. Counts I and IV are both dismissed without prejudice as against the County of DuPage, Illinois.